MONCURE, J.
I think that the bequest of slaves and other property made by Mrs. Rose to trustees for the use and benefit of her daughter Mrs. Coupland, or her heirs, was of an absolute interest in the property, and not óf a life estate only; and that the limitation -over to her son Gustavus A. Rose or his heirs forever, in the event of the death of her said daughter without an heir or heirs of her body, is void for remoteness. The cases on this subject are very numerous; and it is unnecessary to review or even cite them; as, in the view which I take of this case, it is immaterial whether the said bequest be of an absolute or of a life estate. I will consider it, for the purposes of this case, as a bequest of an absolute estate.
I am of opinion that it is a bequest for the separate *use of Mrs. Coup-land. Among the words which have been held, per se, and independently of any contrary intention to be collected from other parts of the will, to create a trust for the wife’s separate use, are the following: “For her sole use and benefit;” “for her sole use;” “for her livelihood;” “for her own use and benefit, independent of any person;” “that she should receive and enjoy the issues and profits.” 2 Roper on Legacies by White 1414; White’s Leading Cases in Equity, 65 Law Libr. 366, 376. But no particular form of words is necessary ; and whenever it appears, either from the nature of the transaction, or from the whole context of the instrument, that the wife was intended to have the property to her sole use, that intention will prevail. 2 Bright on Husband and Wife 211. Though it seems that the intention to give her such an interest, in opposition to the legal rights of her husband, must be clear and unequivocal. Id. 206.
In the case under consideration, whether we look to the particular words used or the whole context of the will, the intention of the testatrix to exclude the marital rights of the husband, and secure the property to the separate use of the wife, is plainly apparent. In the first place, the property is given to trustees; which is a circumstance in favor of the intention to give it to the wife’s separate use, though not of itself a sufficient evidence of such intention. 2: Roper 1415. In the second place, it is “to be held by them in trust, only for the use and benefit” of the w-ife or her heirs. These words are at least as strong as some of those which, we have seen, have been held, per se, to create a trust for separate use. It is difficult to perceive any substantial difference between the words “only for the use and benefit of the wife,” and the words, “for her sole use and benefit,” or the words ‘ ‘for her own use and benefit, independent of any person.” In the third place, the testatrix expresses her ‘ ‘ will and desire to *guard in the most ample manner against the imprudent sale or other disposition of the property” during the life of the wife; and for that purpose, wholly and solely confides it to the discretion of the trustees, in what manner the wife “shall receive and enjoy the profits arising from the hire or other disposition of the slaves aforesaid.”
Here an intention is plainly indicated that neither the wife nor the husband should have a right to sell or otherwise dispose of the property; which is inconsistent with the idea of its being given, sixbject to his. marital rights; in which case the jus dis-ponendi would have been a necessary incident. It is wholly and solely confided to the discretion of the trustees in what manner the wife (not the husband, nor even the husband and wife) “ shall receive and enjoy the profits.” These are the very words which were used in Tyrrell v. Hope, 2 Atk. R. 558; and which the master of the rolls observed could admit of no other construction than that the property should be for the wife’s separate use. He asked to what end she should receive the profits if they were to be the husband’s property the next moment; and added, that the word “enjoy” was very strong to imply a separate use to the wife. 2 Bright 211. The intention to. create a trust for the wife’s separate use is at least as plain in this case as is that of West v. West’s ex’ors, 3 Rand. 373, in which this court unanimously held that a separate estate was given. See also Scott v. Gibbon, 5 Munf. 86; Smith v. Smith’s adm’rs, 6 Id. 581; Markham v. Guerrant, 4 Leigh 279; Lewis v. Adams, 6 Id. 320; and Perkins’ trustee v. Dickinson, 3 Gratt. 335.
I am further of opinion that Mrs. Coup-land has no power to' alien her separate estate or any part of it. The jus disponendi is an inseparable incident of property held by a person who is sui juris. But nothing is now better settled than that it may be severed from “the separate estate of a feme covert. 2 Bright, ch. vii, p. 274; Steedman v. Poole, 6 Hare’s R. 193, 31 Eng. Ch. R. 193; and other cases cited by Bright. In respect of her separate estate she is considered in equity as a feme sole. “Her faculties as such and the nature- and extent of them (says Lord Langdale), are to be collected from the terms in which the gift is made to her, and will be supported by equity for her protection.” — “If *655 the gift be made to her sole and separate use without more, she has, during coverture, an alienable estate independent of her husband. If the gift be made for her sole and separate use, without power to alienate, she has during the coverture, the present enjoyment of an unalienable estate independent of her husband.” — “The separate estate may, and often does, exist, without the restriction, but the restriction has no independent existence; when found, it is a modification of the separate estate, and inseparable from it.” Tullett v. Armstrong, 1 Beav. R. 1, 17 Eng. Ch. R. 132. “When the court first established the separate estate (says Lord Cottenham) it violated the laws of property between husband and wife; but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy separate estate as a feme sole, the laws of property attached to this new estate, and it was found, as part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for ■ it. Equity again interfered, and by another violation of the laws of property, supported the validity of the prohibition against alienation.” Same Case, on appeal, 4 Mylne & Craig 377, 18 Eng. Ch. R. 405.
This is the doctrine in England. In the United States, the right to restrict the power of alienation of a separate estate is universally admitted. In many of the states it has even been held that the wife has no such power, unless it be given her by the instrument *which creates the estate. It has been so held, it seems, in South Carolina, Pennsylvania, Tennessee and Mississippi. See the cases cited in the notes of Hare and Wallace to White’s Equity Cases", 65 Law Libr. 370-378.
In the case of the Methodist Episcopal Church v. Jaques, 3 John. Ch. R. 77, Chancellor Kent was of opinion, that “instead of holding that the wife is a feme sole to all intents and purposes as to her separate property, she ought only to be deemed a feme sole, sub modo, or to the extent of the power clearly given by the settlement. Instead of maintaining that she has an absolute power of disposition unless specially restrained by the instrument, the converse of the proposition would be more correct, that she has no power but what is specially given and to be exercised only in the mode prescribed, if any such there be.” —“Perhaps we ma-y say, that if the instrument be silent as to the mode of exercising the power of appointment or disposition, it intended to leave it at large to the discretion or necessities of the wife; and this is the most that can be inferred.” On appeal to the Court of errors this opinion was pronounced to be erroneous, and it was held that a feme covert may dispose of her separate estate as if she were a feme sole, unless specialty restrained by the instrument under which she acquires it; and that the specification of any particular mode of exercising her disposing power, does not deprive her of the right to pursue any other mode not expressly, or by necessary construction, negatived in the settlement. 17 John. R. 548. In Virginia, the right to restrain or interdict the power, has been expressly recognized and affirmed in several cases. West v. West’s ex’or, 3 Rand. 373; Vizonneau v. Pegram, 2 Leigh 183; Williamson v. Beckham, 8 Leigh 20; Lee v. The Bank of the U. S., 9 Leigh 200. The only question seems to have been whether the specification of one mode of disposition in the settlement is an implied *exclusion of the right to pursue any other: and that question seems not yet to be finally settled. Judge Tucker mantained the affirmative side of the question in the two cases last cited: and the decision of the first of the two cases, so far at least as he was concerned, was founded on that view. Judge Cabell, on the other hand, was decidedly of opinion that even in regard to personal property the weight of authority is the other way; but in regard to real estate (which a feme covert may dispose of in the mode prescribed by the statute unless interdicted by the instrument which settles it upon her, and can dispose of only in that way unless authorized by such instrument to dispose of it in some other), he maintained that the grant of authority to dispose of it in some other' way does not, of itself, exclude the power' to dispose of it in the statutory mode. He could not perceive the force of the argument which infers diminution of power from its. extension ; nor how the express grant of a power which the wife without such grant-had not, can be made to take from- her a power which she had without the grant. He distinguished the case of Lee v. The Bank of the U. S. in which this opinion was given, from the case of Williamson v. Beckham, on the ground that in the latter an intention to exclude all other modes of alienation than that prescribed in the settlement was apparent upon its face. Judge Brockenbrough concurred in Judge Cabell’s, opinion, which prevailed, the court being composed of three judges. See Woodson, trustee, v. Perkins, 5 Gratt. 345.
The right to restrain or interdict the power of alienation of a separate estate being thus established, the question now arises, whether such right was exercised by the testatrix in this case? I think that it was. It is not necessary that the power should be excluded in express terms. It may be excluded by implication. Its exclusion is often, if not generally, ^necessary to effectuate the objects of the settlement, and to protect the wife as well from her own weakness, as, from the power and influence of her husband. The law therefore favors the intention to exclude it, and will give effect to such intention whenever it can be ascertained by a fair construction of the settlement. There can be no doubt, I think, of the intention of the testatrix in this case to exclude the power of alienation. Such a power would be inconsistent with the express terms, and the whole frame and pur *656 pose of the settlement. The testatrix expresses her wish and desire to guard in the most ample manner against the imprudent sale or other disposition of the property during the life of the wife, and wholly and solely confides to the discretion of the trustees in what manner the wife shall receive and enjoy the profits of the property; which property, in the event of the death of the wife without an heir or heirs of her body, is directed to be given up to Gustavus A. Rose, or his heirs forever. Could plainer language have been used to show the intention of the testatrix that the wife should receive and enjoy only the profits, and should have no power to dispose of the property itself? Would not the existence of such a power be in conflict with the declared intention of the testatrix, not only in regard to the wife, but also in regard to Gustavus A. Rose? Although the limitation to the latter may be void, it yet serves in part to show, if the fact be not otherwise, sufficiently shown, that the power to dispose of the property was not intended to be given to the wife. It cannot be necessary to say any thing more on this branch of the subject.
If the power of disposition was not given by the will, it has not been acquired by any thing which has since happened in this case. It can arise from no act or laches of the trustee; who, no more than the wife or her husband, can defeat the provisions of the settlement. *The possession of the husband and wife was consistent with the trust, and was a mode of enjoyment of the profits of the property which the trustees had a right to permit.
It results from what I have said, if it be well founded, that neither Coupland and wife nor Mrs. Coupland had any power to sell or convey the slave in controversy; and consequently that the plaintiff in error, who claims only under them, is not entitled to the slave. It now remains only to en-quire whether the defendant in error is entitled.
The bequest was to three trustees jointly, of whom the defendant in error is the sole survivor. There can be no doubt but that the three trustees, if all alive, would be entitled to demand, recover and hold the slave in trust under the will. The interposition of trustees seems at one time to have been considered necessary to protect the wife’s separate interest. It has been long settled, however, that if no trustees be interposed by the settlement, the husband will be held in equity to be a trustee for the wife. Still, it is generally, if not always, better to have disinterested trustees ; who will be appointed by a court of equity if necessary. The legal title remains in the trustees during the continuance of the trust; whether, in its general character, it be an active or a passive trust: for it is liable at any time to be stimulated to activity by any attempt to divert the property from the purposes of the trust. In this case a large discretion was given to the •trustees in the management of the property. Though they were authorized, in their discretion, to permit the husband and wife to hold it, yet they had a right to take possession at any time, and it was their duty to do so whenever the safety of the property required it. Whether, the trust being joint, the defendant can alone perform it or not, the legal title to the property is in him by survivorship, and he *has therefore a right to recover it at law. A right of action accrued to him for the slave in controversy at the time of the sale to the plaintiff in error, who became responsible for hires also from that time as a legal incident of property’ wrongfully withheld from the. legal owner. Whether the plaintiff in error is entitled to any, and if any, what relief in equity, is a question which it is unnecessary, and would be improper, to decide in this case.
I am for affirming the judgment.
The other judges concurred in the opinion of Moncure, J.
Judgment affirmed.